1  James T. Ryan, Esq. (SBN 210515)
   JAMES T. RYAN, PC
2  1110 Glenville Drive #307
   Los Angeles, California 90035
3  Phone: (310) 990-2889
   *jr@jamestryan.com*
4
   Kenneth A. Goldman, Esq. (SBN 250941)
5  LAW OFFICE OF KENNETH A. GOLDMAN, PC
   15300 Ventura Boulevard, Suite 207
6  Sherman Oaks, California 91403
   Phone: (818) 287-7689
7  Facsimile: (818) 287-7816
   *ken@kengoldmanlaw.com*
8
   For Plaintiff Alana Schwartz
9  and other persons similarly situated

10
                **UNITED STATES DISTRICT COURT**
11
                **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  **ALANA SCHWARTZ**, individually and on behalf of other persons similarly situated, | Case No.:  14-CV-01477-GHK-FFM |
| 14 | |
| 15  Plaintiff, | **FIRST AMENDED COMPLAINT FOR VIOLATION OF CAL. CIVIL CODE § 1747.08 [SONG-BEVERLY CREDIT CARD ACT OF 1971]** |
| 16  vs. | |
| 17  **DESTINATION MATERNITY CORPORATION** and **DOES 1-20**, | |
| 18  Defendants. | Before the Hon. George H. King |
| 19 | |

20

21  COMES NOW PLAINTIFF ALANA SCHWARTZ and pleads as follows:

22

23                    **INTRODUCTION**

24      1.    The California Supreme Court in *Pineda v. Williams-Sonoma Stores,*

25  *Inc.*, 51 Cal.4th 524 (2011) reiterated that the Song-Beverly Credit Card Act of

26  1971 (Cal. Civ. Code § 1747 et seq.) "is designed to promote consumer protection"

27  and is intended to address the "misuse of [a customer's] personal identification

28  information for, inter alia, marketing purposes."  *Pineda* explained that the

---

                                    **FIRST AMENDED COMPLAINT**

statute's overriding purpose was to "protect the personal privacy of consumers who pay for transactions with credit cards." (Assem. Com. on Finance & Insurance, Analysis of Assem. Bill No. 2920 (1989–1990 Reg. Sess.) as amended Mar. 19, 1990, p. 2.)  *Pineda* also noted that the Legislature's motivating concerns were that retailers acquire unnecessary personal information for their own business purposes to, for example, "build mailing and telephone lists which they can subsequently use for their own in-house marketing efforts, or sell to direct-mail or telemarketing specialists, or to others."  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2920 (1989–1990 Reg. Sess.) as amended June 27, 1990, pp. 3–4.)  *Pineda* also explained that the Legislature sought to prohibit businesses from "requiring information that merchants, banks or credit card companies do not require or need." (Assem. Com. on Finance and Insurance, Analysis of Assem. Bill No. 2920 (1989–1990 Reg. Sess.) as amended Mar. 19, 1990, p. 2.)

2. A provision of the Song-Beverly Credit Card Act prohibits businesses from requesting that cardholders provide their telephone number during credit card transactions, and then recording that information into the businesses' database. (Cal. Civ. Code § 1747.08, subd. (a)(2) & (b).)  In 1991, the Legislature broadened subdivision (a)(2) from not only prohibiting a business from "requiring" that a customer provide her telephone number but also forbidding a "request" for a telephone number.  This broadening amendment was intended to prevent businesses from making an end-run around the law by claiming that the customer furnished her telephone number voluntarily.  (Legis. Counsel's Dig., Assem. Bill No. 1477 (1991–1992 Reg. Sess.) p. 1).

3. In this case, Defendant Destination Maternity Corporation requested Plaintiff Alana Schwartz' telephone number on multiple occasions in violation of California Civil Code § 1747.08(a)(2).

//

**FIRST AMENDED COMPLAINT**

## THE PARTIES

4.     Plaintiff ALANA SCHWARTZ (hereinafter "Plaintiff" or "Schwartz") is an individual residing at all relevant times in the County of Los Angeles, State of California.

5.     Plaintiff is informed and believes, and based thereon alleges, that Defendant DESTINATION MATERNITY CORPORATION (hereinafter "DMC") is a corporation organized under the laws of Delaware, with its principal place of business in Pennsylvania.  DMC claims to be the world's largest designer and retailer of maternity apparel and operates several different a retail clothing stores that carry maternity clothing, including Motherhood Maternity, A Pea In The Pod, and Destination Maternity.

6.     Plaintiff is unaware of the names and true capacities of defendants, whether individual, corporate and/or partnership entities, named herein as DOES 1 through 20, inclusive, and therefore sues them by their fictitious names.  Plaintiff will seek leave to amend this Complaint when their true names and capacities are ascertained.  Plaintiff is informed and believes, and based thereon alleges, that said defendants and DOES 1 through 20, inclusive, are in some manner responsible for the wrongs alleged herein, and that at all times referenced each was the agent and servant of the other defendants and was acting within the course and scope of said agency and employment.  Plaintiff is informed and believes, and based thereon alleges, that said defendants and DOES 1 through 20, inclusive, entered into a conspiracy with each other to plan and commit the wrongs alleged herein.

7.     Plaintiff is informed and believes, and based thereon alleges, that at all relevant times herein, each of the defendants, including DOES 1 through 20, inclusive, directed, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their actions and/or inaction directed, ratified and encouraged such acts and behavior.  Plaintiff further alleges that Defendants had a non-delegable duty to prevent such acts and

**FIRST AMENDED COMPLAINT**

1 the behavior described herein, which duty Defendants failed and/or refused to

2 perform.

3

4 **UNDERLYING FACTS GIVING RISE TO VIOLATIONS**

5 **OF THE SONG-BEVERLY CREDIT CARD ACT OF 1971**

6       8.     During the proposed class period, Plaintiff shopped at DMC's

7 California retail locations and purchased merchandise on multiple occasions using

8 a credit card.

9       9.     In or about March 2013, Plaintiff visited a DMC retail location at the

10 Westfield Topanga Mall for the first time and made a purchase using a credit card.

11       10.    During the transaction, Plaintiff was asked by the cashier whether

12 Plaintiff wanted to receive special offers by signing up for DMC's mailing list,

13 which DMC refers to as the "Perks" program.  The "Perks" program does not

14 provide any benefits to those who enroll related to the amount of merchandise

15 purchased by the customer.  The "Perks" program is DMC's moniker for its

16 mailing list.  Plaintiff is informed and believes that people who sign up for DMC's

17 mailing list are unknowingly also registered for offers and samples from DMC's

18 partners, e.g., Huggies®, Enfamil®, and Viacord®.

19       11.    While she was in the store in or about March 2013, Plaintiff agreed to

20 sign up for DMC's mailing list and provided her telephone number to DMC in

21 connection therewith.

22       12.    After obtaining Plaintiff's telephone number, the DMC employee

23 typed the telephone number into a data base maintained by DMC through the

24 electronic cash register.

25       13.    Subsequent to her first visit, Plaintiff visited the same store and made

26 purchases using a credit card.  On each subsequent visit (except as alleged below),

27 after Plaintiff came to the counter to make the purchase, the cashier asked Plaintiff

28 in sum or substance:  "Have you shopped with us before?"  Plaintiff responded in

**FIRST AMENDED COMPLAINT**

the affirmative.  The casher then asked Plaintiff in sum and substance:  "Can I have your telephone number?"  Plaintiff provided her telephone number each time believing that her telephone number was necessary to complete the credit card transaction.  Each time Plaintiff provided her telephone number, the cashier typed it into the electronic cash register system.

14.    Each time Plaintiff made a purchase using a credit card at Defendants' stores, the request for Plaintiff's phone number was made prior to DMC's printing of Plaintiff's transaction receipt and completion of the transaction.  At no time prior to handing Plaintiff her receipt or prior to DMC's request for Plaintiff's personal identifying information did any person from DMC inform Plaintiff that her credit card transaction was complete.  Plaintiff is informed and believes that no signage in the store indicated that provision of her phone number was not necessary to complete a credit card transaction despite DMC's policy of requesting Plaintiff's phone number during each credit card transaction.

15.    Except as alleged below, not once during any transaction did the cashier inform Plaintiff that Plaintiff was not required to provide her phone number.  Nor did the cashier indicate to Plaintiff that the reason the telephone number was requested was for purpose of verifying her enrollment in the "Perks" program.

16.    When Plaintiff provided her telephone number on one occasion, the cashier typed it into the system and remarked that Plaintiff had spent less on this occasion than she had on previous occasions.

17.    In or about December 2013, Plaintiff again made a purchase at Defendants' retail location.  Again, during the transaction, the cashier asked Plaintiff in sum or substance:  "Have you shopped with us before?"  Plaintiff responded in the affirmative.  The cashier then asked Plaintiff in sum and substance:  "Can I have your telephone number?"  On this occasion, now having the benefit of knowledge of her privacy rights under the Song-Beverly Credit Card

5

Act, Plaintiff asked the clerk whether she was required to provide her phone number.  Plaintiff was then told that her phone number was not required and Plaintiff did not provide it.  Had Plaintiff not specifically inquired, DMC's practices and procedures would have led her to believe that her phone number was required to complete her transaction.

18.     Plaintiff is informed and believes that at all times relevant during the proposed class period, DMC did not maintain a customer loyalty or points program.  The "Perks" program is not a loyalty or points program that allows a customer, like Plaintiff, to accumulate some benefit with DMC by making purchases.  Instead, DMC uses the "Perks" program in stores as a subterfuge to obtain customers' telephone number(s) so that DMC could collect personal identifying information about its customers for marketing and other internal purposes that benefit DMC.  Plaintiff is informed and believes that DMC profits by selling its customer-related information to other maternity-centered businesses, such as Enfamil®, Viacord®, and Huggies®, and that any reference by DMC to the "Perks" program as a loyalty program is subterfuge for DMC's farming of client information for sale to those aforementioned companies.

19.     DMC, in some manner not yet specifically known, connects a customer's telephone number (initially provided in store under the auspices of enrolling in the "Perks" program) with other data about the customer, including the amount and types of items purchased.

20.     As a consequence of the foregoing policy and practices, DMC is violating the letter and spirit of the Song-Beverly Credit Card Act by requesting and obtaining the customer's telephone number for marketing purposes during and prior to completion of a credit card transaction.

//

//

**FIRST AMENDED COMPLAINT**

1

## CLASS ALLEGATIONS

2      21.     This lawsuit is brought on behalf of the following ascertainable class:

3              **All persons from whom Defendants requested**

4              **and recorded telephone numbers in conjunction**

5              **with a credit card transaction in its California**

6              **retail stores since one year prior to the date this**

7              **lawsuit was filed.** (the "Class")

8      22.     The following persons are excluded from the Class: persons who

9      utilized a credit card issued for business purposes; persons whose personal

10     identification information was required for a special purpose incidental but related

11     to the individual credit card transaction, including but not limited to information

12     related to shipping, delivery, servicing, or installation of the purchased

13     merchandise, or for special orders; officers and directors of Defendants and of their

14     corporate parents, subsidiaries, affiliates, or any entity in which Defendants have a

15     controlling interest, and the legal representatives, successors, or assigns of any

16     such excluded persons or entities; and the Court.

17     23.     The members of the Class are so numerous that joinder of all

18     members is impracticable.  While the exact number of Class members is unknown

19     Plaintiffs at this time, such information can be ascertained through appropriate

20     discovery from records maintained by Defendants and their agents.

21     24.     A class action is superior to other available methods for the fair and

22     efficient adjudication of this controversy because joinder of all members is

23     impracticable, the likelihood of individual Class members prosecuting separate

24     claims is remote and individual Class members do not have a significant interest in

25     individually controlling the prosecution of separate actions.  Relief concerning

26     Plaintiff and the Class' rights under the laws alleged herein and with respect to the

27     Class as a whole would be appropriate.  Plaintiff knows of no difficulty to be

28     encountered in the management of this action which would preclude its

7

**FIRST AMENDED COMPLAINT**

1  maintenance as a class action.

2      25.    There is a well-defined community of interest among the members of

3  the Class because common questions of law and fact predominate, Plaintiffs'

4  claims are typical of the members of the Class, and Plaintiffs can fairly and

5  adequately represent the interests of the Class.

6      26.    Common questions of law and fact exist as to all members of the

7  Class and predominate over any questions affecting solely individual members of

8  the Class.  The questions or law and fact common to the Class include:

9          a.  Whether each Class member engaged in a credit card transaction with

10             Defendants;

11         b.  Whether Defendants requested the cardholder to provide his or her

12             telephone number and recorded the telephone number of the

13             cardholder during credit card transaction(s) with Class members;

14         c.  Whether Defendants' conduct of requesting the cardholder to provide

15             his or her telephone number during credit card transaction(s) and the

16             recording of the telephone numbers constitutes violations of

17             California Civil Code section 1747.08; and

18         d.  Whether Plaintiff and the Class are entitled to civil penalties.

19     27.    Plaintiff's claims are typical of those of the other Class members

20  because Plaintiff, like every other Class member, was subject identical conduct by

21  Defendants and is entitled civil penalties in amounts of up to two hundred fifty

22  dollars ($250) for the first violation and one thousand dollars ($1,000) per each

23  subsequent violation pursuant to California Civil Code section 1747.08(e).

24     28.    Plaintiff can fairly and adequately represent the interests of the Class,

25  she has no conflicts of interest with other Class members, and she has retained

26  counsel competent and experienced in class action and civil litigation.

27  //

28

8

**FIRST AMENDED COMPLAINT**

# CLAIM FOR RELIEF

## For Violation of Cal. Civil Code § 1747.08

29.     Plaintiff realleges each and every allegation contained in paragraphs 1 through 28 above, and by this reference, incorporates said paragraphs as though fully set forth herein.

30.     California Civil Code section 1747.08, subsection (a) prohibits any corporation, which accepts credit cards for the transaction of business, from requesting the cardholder to provide "personal identification information" which the corporation then records in conjunction with a credit card transaction.

31.     Civil Code section 1748.08, subsection (b) defines "personal identification information" to include "information concerning the cardholder, other than information set forth on the credit card, including, but not limited to, the card holder's address and telephone number."

32.     Defendants accept credit cards for the transaction of business.

33.     When Defendants entered into credit card transactions with customers for the transaction of business, Defendants requested and recorded telephone numbers of their customers who use credit cards at the point of sale in Defendants' retail stores.  The recorded telephone numbers are stored in a data base maintained by Defendants.

34.     It was Defendants' routine business practice to request telephone numbers from every one of their customers when purchases were made with credit cards.

35.     Plaintiff is not asserting a violation for Defendants' initial recording of her telephone number when it was voluntarily provided by Plaintiff in response to a request by Defendant to sign up for DMC's mailing list, which DMC refers to as the "Perks" program.  Plaintiff is asserting a violation for all of Defendants' subsequent requests for her telephone number (as described above) where Plaintiff provided her telephone number and it was typed into Defendants' database.

**FIRST AMENDED COMPLAINT**

36.     As a direct and proximate result of Defendants' violations, Plaintiffs and the Class are entitled to civil penalties in amounts up to one thousand dollars per violation pursuant to Civil Code section 1747.08(e).

## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, and request relief as follows:

A.     That the Court certify this action as a class action;

B.     That the Court appoint Plaintiff as an adequate class representative and her counsel as adequate class counsel;

C.     That the Court order Defendants to pay for notice to the Class upon certification;

D.     That the Court award to Plaintiff and each member of the Class the civil penalty to which he or she is entitled pursuant to California Civil Code section 1747.08(e);

E.     For an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and the "common fund" doctrine;

F.     For costs of suit incurred herein; and

G.     Such other relief as this Court may deem just and proper.

DATED: May 21, 2014                    JAMES T. RYAN, PC
                                       LAW OFFICE OF KENNETH A. GOLDMAN


                              By:           /s/
                                       KENNETH A. GOLDMAN, Esq.
                                       Attorney for Plaintiff,
                                       ALANA SCHWARTZ

**FIRST AMENDED COMPLAINT**