James T. Ryan, Esq. (SBN 210515)
JAMES T. RYAN, PC
1110 Glenville Drive #307
Los Angeles, California 90035
Phone: (310) 990-2889
*jr@jamestryan.com*

Kenneth A. Goldman, Esq. (SBN 250941)
LAW OFFICE OF KENNETH A. GOLDMAN, PC
15300 Ventura Boulevard, Suite 207
Sherman Oaks, California 91403
Phone: (818) 287-7689
Facsimile: (818) 287-7816
*ken@kengoldmanlaw.com*

For Plaintiff Alana Schwartz
and other persons similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALANA SCHWARTZ**, individually and on behalf of other persons similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>**DESTINATION MATERNITY CORPORATION** and **DOES 1-20,**<br><br>        Defendants. | Case No.:  14-CV-01477-GHK-FFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Declarations of James T. Ryan, Esq., Kenneth A. Goldman, Esq., Alana Schwartz, John Wolff, Kristen Lamb Diamond, and Steven J. Powell filed concurrently]**<br><br>Date:         July 20, 2015<br>Time:         9:30 a.m.<br>Courtroom:    650<br>Before the Honorable George H. King |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at 9:30 a.m. on July 20, 2015, or as soon thereafter as the matter may be heard United States District Court for the Central District of California, Courtroom 650, located at 255 East Temple Street, Los Angeles, California 90012-3332, before the Honorable George H. King, Plaintiff Alana Schwartz ("Plaintiff"), individually and on herself and all others similarly situated, will and hereby does move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an Order:

1. Certifying the stipulated Class for settlement purposes;
2. Granting preliminary approval of the Settlement;
3. Approving the proposed form of notice and scheduling the dissemination of notice;
4. Scheduling a hearing for final approval of the Settlement; and
5. Scheduling a hearing for Class Counsel's motion for an award of attorneys' fees and costs and Plaintiff's incentive award.

Attached to the Declaration of James T. Ryan, submitted herewith, is the Settlement Agreement with attachments.

The grounds for this amended motion are that the proposed Class settlement is within the range of being finally approved as fair, adequate, and reasonable and is not opposed by Defendant Destination Maternity Corporation.

This amended motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declarations of James T. Ryan, Esq., Kenneth A. Goldman, Esq., Alana Schwartz, John Wolff, Kristen Lamb Diamond, and Steven J. Powell, the complete file and records in this action, and any oral argument allowed by the Court. A proposed form of the Order is submitted herewith.

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

1

2

DATED: June 17, 2015                        JAMES T. RYAN, PC
                                            LAW OFFICE OF KENNETH A. GOLDMAN, PC

3

4                              By:    /s/ James T. Ryan

5                                     JAMES T. RYAN, Esq.
                                      Attorney for Plaintiff, ALANA SCHWARTZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     BACKGROUND INFORMATION ........................................................1

    A.   Nature of Case ..............................................................................1

    B.   Procedural History ........................................................................2

    C.   Mediation resulting in settlement .................................................2

    D.   Summary of Settlement Terms ......................................................3
          i.     Settlement class definition ...................................3
          ii.    Settlement Benefit to Class Members ...................6
          iii.   Class period and release of claims .......................6
          iv.    Injunctive relief....................................................6
          v.     Attorneys' fees and costs .....................................7
          vi.    Incentive award to Plaintiff .................................8
          vii.   Claims administration ..........................................8
          viii.  Notice procedures ................................................8

III.    LEGAL STANDARD ..............................................................................8

    A.   Criteria for Preliminary Approval of Settlement .........................8

    B.   Procedural for Preliminary Approval of Settlement .....................9

IV.     ARGUMENT .........................................................................................10

    A.   The Court Should Certify a Settlement Class for Settlement
       Purposes ......................................................................................10
          i.     The requirements of Rule 23(a) are satisfied.....11
          ii.    The requirements of Rule 23(b) are satisfied .....14

    B.   The Court Should Grant Preliminary Approval ..........................15
          i.     The settlement terms are fair, adequate an reasonable ..........16
          ii.    The Settlement Agreement resulted from arm's-length
             negotiations .......................................................21
          iii.   The factual record was sufficiently developed .....................21
          iv.    The rationale for settling this matter instead of pursuing
             further litigation ................................................22
          v.     The Certificates are not "coupons" under CAFA ................22
          vi.    The proposed notice to Class Members is adequate..............24
          vii.   Defendant's Business Records Are Sufficiently Precise
             to Determine Class Membership .........................25

    C.   Plaintiff Requests That The Court Set a Final Approval
       Hearing Schedule........................................................................28

V.      CONCLUSION .....................................................................................29

# **TABLE OF AUTHORITIES**

Cases

*Acosta v. Equifax Information Services LLC*,
    243 F.R.D. 377 (C.D. Cal. 2007) .................................................1, 9

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)................................10, 24

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ................................11

*Chaikin v. Lululemon USA Inc.*, 2014 WL 1245461
    (S.D. Cal., Mar. 17, 2014) ................................20

*Dardarian v. OfficeMax North America, Inc.*, 2014 WL 7463317
    (N.D. Cal., Dec. 30, 2014)................................20

*Davis v. Devanlay Retail Group, Inc.*, 785 F.3d 359 (9th Cir. 2015) ..............17, 18

*Dean v. Dick's Sporting Goods*, 2013 WL 3878946
    (C.D. Cal. July 26, 2013)................................17

*Florez v. Linens 'N Things, Inc.*, 108 Cal.App.4th 447 (2003) ................................4

*Gass v. Best Buy Co., Inc.*, 279 F.R.D. 561 (C.D. Cal. 2012)................................16, 17

*Gormley v. Nike, Inc.*, 2013 WL 322538
    (N.D. Cal., Jan. 28, 2013)................................17

*Gossoo v. Microsoft Corp.*, 2013 WL 5651271
    (C.D. Cal., Oct. 9, 2013)................................17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 2003) ................................9, 12, 13

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ................................13

*In re Immune Response Secur. Litig.*, 497 F. Supp. 2d 1166
    (S.D. Cal. 2007)................................15

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015)...23, 24

*In re Portal Software, Inc. Securities Litigation*, 2007 WL 4171201
    (N.D.Cal. Nov. 26, 2007) ................................18

*In re Syncor ERISA Litig.*, 516 F.3d 1095
    (9th Cir. 2008) ................................9

*In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act
(FACTA) Litigation*, 295 F.R.D. 438 (C.D. Cal. 2014)................................7

*Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417
    (N.D.Cal. Feb. 7, 2008) ................................19

ii

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) .............................................................8

*Linney v. Cellular Ala. Partnership*, 1997 WL 450064
    (N.D. Cal., July 18, 1997) ....................................................................15

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir.1998) ...........................19

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ............................................................13

*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995) ......................8

*Morey v. Louis Vuitton North America, Inc.*, 2014 WL 109194
    (S.D. Cal., Jan. 9, 2014) ................................................................20, 23

*Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9
    (2d Cir. 1981) ......................................................................................20

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)..............15

*Pereira v. Ralph's Grocery Co.*, 2010 WL 6510338
    (C.D. Cal., Mar. 24, 2010)....................................................................10

*Polar Int'l Brokerage Corp. v. Reese*, 187 F.R.D. 108 (S.D.N.Y. 1999) ..............21

*Satchell v. Fed. Express Corp.*, 2007 WL 1114010
    (N.D. Cal. Apr. 13, 2007)......................................................................21

*Seebrook v. Children's Place Retail Stores, Inc.*, 2013 WL 6326487
    (N.D. Cal., Dec. 4, 2013)........................................................21, 23, 24

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ........................9, 13, 15

*TJX Companies, Inc. v. Superior Court*, 163 Cal.App.4th 80 (2008) ......................6

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)...............................9

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)..................................11, 12

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ...................14

## Statutes

28 U.S.C. § 1712........................................................................................23

Civil Code section 1747.08..................................................................passim

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

Other Authorities

1 Newberg & Conte, Newberg on Class Actions, § 3.3 (4th ed. 2002) ..................11

Conte & Newberg, 4 Newberg on Class Actions (4th ed. 2010)
    ("Newberg") § 12:15 ...............................................................19, 20

Federal Practice and Procedure, § 1779 at p. 174 (2005)........................14

Moore's Fed. Prac. ¶ 23.165 (3d ed. 2009) ............................................10

Rules

Fed. R. Civ. Proc. 23...........................................................................passim

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Alana Schwartz, individually and as a representative for Class Members, seek preliminary approval of a settlement in this matter, which would completely resolve the case.  Defendant Destination Maternity Corporation ("Defendant") does not oppose this motion.  This amended motion addresses the concerns identified by the Court in its May 18, 2015 Order (Doc. No. 57).

The settlement warrants preliminary approval by the Court. "To determine whether preliminary approval is appropriate, the settlement only need be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out." *See Acosta v. Equifax Information Services LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).

The parties reached a settlement after lengthy negotiations over the course of the litigation, including a formal mediation session with Hon. Edward Infante (Ret.) and numerous settlement discussions outside of formal mediation.

Careful consideration has led counsel and the parties to conclude it is in the interests of the class to avoid the risks, cost, delays and uncertainty of further litigation.  Plaintiff therefore respectfully requests that the Court (1) preliminarily approve the Class Action Settlement Agreement and Release (the "Settlement Agreement") attached as Exhibit 1 to the Declaration of James T. Ryan, (2) set a schedule for a hearing on the final approval of the Settlement Agreement and Plaintiff's applications for attorneys' fees and costs, and incentive award, and (3) approve the notice and procedure for class notice.

## II.   BACKGROUND INFORMATION

### A. Nature of Case

This class action arises from violations of California Civil Code section 1747.08 (California's Song-Beverly Credit Card Act of 1971) (the "Act") which,

generally speaking, prohibits a retailer from collecting personal identifying information (e.g., telephone numbers) as a condition for the use of a credit card to make a purchase.  Plaintiff alleges in her First Amended Complaint that Defendant violated Civil Code section 1747.08 when it requested and recorded telephone numbers from customers, which were obtained and maintained in Defendant's database.  The class period reaches back to January 15, 2013.  Defendant denies all liability and denies that it engaged in any wrongdoing.

### B. <u>Procedural History</u>

The original Complaint was filed on January 15, 2014, in the Los Angeles Superior Court.  On February 27, 2014, Defendant removed the case pursuant to the Class Action Fairness Act.  Thereafter, Defendant moved to dismiss the Complaint and moved to strike portions of the Complaint, including the class action allegations.  On April 30, 2014, the Court dismissed Plaintiff's claim with leave to amend and entered other orders narrowing the relief sought.  Plaintiff filed a First Amended Complaint and Defendant filed another motion to dismiss and to strike.  On August 4, 2014, the Court denied Defendant's motion in part and granted it in part.  Defendant answered on August 19, 2014, and raised eleven affirmative defenses.

Defendant provided its Initial Disclosures on September 26, 2014.  Thereafter, Plaintiff propounded interrogatories and document requests on myriad issues relating to merits and class issues.  Defendant provided substantive responses to written discovery and documents on November 24, 2014.

### C. <u>Mediation resulting in settlement</u>

On October 20, 2014, the Court ordered that the parties complete early mediation by December 15, 2014.  On December 10, 2014, the parties conducted a full-day mediation before the Hon. Edward Infante (Ret.) of JAMS.  The parties had several follow-up calls with Judge Infante in an effort to resolve the dispute.  Eventually, after adversarial, non-collusive and arms-length negotiations through

1   the assistance of Judge Infante, the parties reached a resolution, which is reflected

2   in the Settlement Agreement.

3   **D. <u>Summary of Settlement Terms</u>**

4   While the Settlement Agreement attached as Exhibit 1 to the Declaration of

5   James T. Ryan contains all of the terms of the settlement, here are some of the key

6   terms:

7   i.   <u>Settlement class definition</u>

8   Following the Court's denial without prejudice of Plaintiff's initial motion for

9   preliminary approval, the parties amended the proposed class definition in attempt

10  to simplify the language without altering the intended scope of the Class.  As

11  amended, the proposed settlement Class consists of the following:

12
13  All members of Destination's "Perks" Program and/or persons who
    subscribed through Destination to *Parents* or *Parenting* magazines
14  who made at least two transactions at a Destination retail location(s)
    within California during the period of July 15, 2012 through the date
15  that the Court enters the Preliminary Approval Order, the second or
    subsequent transaction(s) of which consisted of a credit card purchase
16  transaction(s) without simultaneous merchandise exchange or return
    that occurred during the period of January 15, 2013 through the date
17  that the Court enters the Preliminary Approval Order.
18

19  Excluded from the Class are: (1) persons whose provision of personal
    identification information to Destination at the time of the second or
20  subsequent credit card purchase(s) was made in conjunction with (a)
    supplying shipping information for merchandise purchased during the
21  transaction, (b) arranging delivery of merchandise purchased during
    the transaction, (c) servicing of merchandise purchased during the
22  transaction, or (d) a special order; and (2) officers and directors of
    Defendants and of their corporate parents, subsidiaries, affiliates, or
23  any entity in which Defendants have a controlling interest, and the
    legal representatives, successors, or assigns of any such excluded
24  persons or entities.
25
26
27  The Class is defined in this specific manner for several reasons.  First, this
28

3

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

case involves requests for personal identification information ("PII") during shopping visits subsequent to the customer's initial voluntary provision of PII. The Class includes subscribers of *Parents* or *Parenting* magazine because those individuals voluntarily provided PII to Defendant initially just as did members of Defendant's Perks Program.   As the Court recognized in its Order denying Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff alleged that she voluntarily provided her PII during her first transaction at the store in order to sign up for Defendant's Perks Program.  (Doc. No. 26, p. 2)  The same is true of those persons who voluntarily provided their PII in connection with initially signing up for *Parents* or *Parenting* magazine.  The Act does not prevent retailers from soliciting personal identification information from their customers altogether—retailers may solicit and accept such information so long as it is provided voluntarily. *Florez v. Linens 'N Things, Inc.*, 108 Cal. App. 4th 447, 451 (2003).  For these reasons, anyone who voluntarily provided their PII to either initially sign up for the Perks Program and/or a magazine subscription did so voluntarily in response to a request for the same.  Plaintiff contends in this case that Defendant's second request for PII (i.e., after the customer has initially signed up) violates the Act.  Plaintiff specifically limited her claims to requests made after the initial sign up for Perks or *Parents* or *Parenting* magazine.  (Doc. No. 26 at ¶¶13, 25; Doc. No. 39, p. 2.)

Second, a Class Member must have had two purchase transactions with Defendant in order to qualify because, as stated above, the initial transaction in which the PII was provided (for Perks or a magazine) does not qualify as a violation because the provision of PII was done voluntarily for that transaction. Thus, those persons who voluntarily provided PII the first time in order to sign up for Perks or a magazine would not be a Class Member both because that is not a violation and because Plaintiff's allegations only concern provision of PII on subsequent visits.

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

Third, the reason the purchase transaction history reaches back to July 15, 2012 (the " six-month look back period"), is to ensure that the subsequent provisions of PII during purchase transactions would fall within the class period alleged in the First Amended Complaint  (i.e., January 15, 2013).   Plaintiff specifically bargained for the six-month look back period so that more people would fall into the Class.  Plaintiff assumed that a pregnant woman would not usually make her first purchase at a maternity store until at least three months into pregnancy.  By way of example, a typical woman who becomes pregnant in mid-April 2012 may not make her first purchase until mid-July 2012 at which point, if she makes her initial transaction, she may have voluntarily provided her PII in connection with signing up for Perks or a magazine.  That initial transaction would not be a violation – not only because it was voluntary, but also because it falls outside of the statute of limitations – however, the July purchase would count as the initial transaction such that any subsequent transaction would qualify as a violation through and including the date of the Preliminary Approval Order.  This provision assumed that pregnant women would shop with greater frequency in their second and third trimesters.

Fourth, the reason why certain credit card transactions are excluded if the consumer made other arrangements (for shipping, exchange of merchandise, returns, arranging delivery of merchandise, servicing of merchandise, or special orders) at the time of purchase is because the Act contains statutory exceptions.  Pertinent to the claims in this case, the Act does not apply in the following instances:

> If personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders.

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

Cal. Civ. Code § 1747.08(c)(4).  In addition to the statutory exception, there is a common law exception for merchandise returns.  *TJX Companies, Inc. v. Superior Court*, 163 Cal.App.4th 80, 89 (2008).[1]

### ii.  Settlement Benefit to Class Members

This is not a claims-made settlement.  Every member of the Class who does not opt-out will automatically receive a $25.00 transferable certificate that shall be valid for a credit to be used on a single, in-store purchase of full-price merchandise at any Destination Maternity California standalone retail store, which Defendant owns and operates, i.e., Destination Maternity, A Pea in the Pod, and Motherhood Maternity, with no minimum or maximum purchase amount (the "Certificate").  The Certificate shall expire ten (10) months after issuance.

In addition, every Class Member will be provided with the opportunity to be removed from the mailing lists maintained by Defendant by way of a link to a website maintained by the claims administrator.

### iii.  Class period and release of claims

The class period reaches back to January 15, 2013, and extends to the date of final approval.  However, as explained above, there is a six-month look back, which allows for subsequent transactions to count for purposes of obtaining the Certificate.

### iv.  Injunctive relief

Defendant agrees to injunctive relief, which takes several forms.  First, Defendant agrees to comply with Civil Code section 1747.08 so long as it remains in effect.  Second, Defendant agrees to amend in-store signage in its California retail locations regarding its Perks Program, which includes placing prominent

---

[1] The other exclusions, such as for employees of Defendant, are typical.

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

signs in stores[2] that informs customers that they are not required to provide their personal identification information in order to process their credit card purchases. Third, Defendant agrees to provide its California employees who process in-store credit card purchase transactions with additional training regarding the requirements of California Civil Code section 1747.08, including regular reminders and training manuals that will include instructions that Destination employees cannot request PII from customers in a manner where the customer may reasonably perceive the provision of PII as a condition for the use of a credit card in a purchase transaction.

v.   <u>Attorneys' fees and costs</u>

Subject to Court approval, Defendant will pay Plaintiff's counsel's attorneys' fees in the amount of $198,750.00 and costs up to $12,500.00.  Unlike a traditional clear sailing agreement[3], the amount of attorney's fees in the settlement approximates counsel's lodestar through the date of final approval.  With respect to the costs, Defendant has only agreed to pay actual costs.  These costs and fees will be awarded only if approved by the Court after considering any objections.

Because this Court exercises diversity jurisdiction over this case, California substantive law applies to the calculation of the attorney fee award.  *Mangold v.*

---

[2] Where Defendant maintains register areas, the signs are to be placed in the immediate vicinity of the registers.  In the event Defendant does not have a dedicated register area, then the signs are to be placed in a conspicuous and unobstructed view of the shopping area.  *See* Ryan Decl., Ex. 1 [Settlement Agreement, §2.4].

[3] "In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *In re Toys R Us-Delaware, Inc.--Fair and Accurate Credit Transactions Act (FACTA) Litigation*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) (citing *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 520 n. 1 (1st Cir.1991)).

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

*Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  California law requires that an attorney fee award should ordinarily include compensation for all hours reasonably spent on the prosecution of the case.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001).  California further applies a contingent risk factor in its lodestar multiplier analysis.  *See*, *e.g.*, *Cates v. Chiang*, 213 Cal.App.4th 791, 823 (2013) quoting *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579-80 (2004)).

Because Plaintiff's counsel's fee application will be based on an approximation of counsel's lodestar through the date of final approval, and because California law holds that a fee award should compensate counsel for all hours reasonably spent prosecuting the case, the requested fee award comports with California substantive law and should be considered fair and reasonable at this stage.

### vi.   Incentive award to Plaintiff

Subject to Court approval, Defendant agrees to pay an incentive award of $5,750.00 to Plaintiff for her role in serving as class representative.

### vii.   Claims administration

The claims administration will be handled through Gilardi & Co. LLC ("Gilardi") and will be paid for by Defendant.

### viii.   Notice procedures

The Class Members will receive notice via email if they have provided an email address to Defendant in connection with signing up for Defendant's mailing list or Perks program.  If Defendant does not have an email address for a Class Member or if the email notice is returned undeliverable, the claims administrator will send notice via direct U.S. mail.  Before direct mail is sent, the claims administrator will conduct a national change of address search.

## III.   LEGAL STANDARD

### A. Criteria for Preliminary Approval of Settlement

Rule 23(e) of the Federal Rules of Civil Procedure provides that settlement

8

of claims of a certified class is subject to the court's approval. In the Ninth Circuit, settlement of class actions is generally favored as a matter of "strong judicial policy." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("overriding public interest in settling and quieting litigation," especially in class actions).

## B. Procedural for Preliminary Approval of Settlement

In reviewing a class action settlement, a court undertakes two fundamental inquiries. "First, the district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In other words, the court must determine that the lawsuit qualifies as a class action under Rule 23 to begin with. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 2003) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)). Second, the court must determine whether the settlement taken as a whole is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. When the parties reach a settlement agreement before atrial class is formally certified, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Equifax Information Services LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007).

The approval of a proposed class action settlement "is committed to the sound discretion of the trial judge." *Hanlon*, 150 F.3d at 1026. In exercising this discretion, the trial court must give "proper deference to the private consensual decision of the parties," as "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

At the preliminary approval stage, the court need only review the parties'

9

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate.  *Pereira v. Ralph's Grocery Co.*, 2010 WL 6510338, at *2 (C.D. Cal., Mar. 24, 2010).  A final analysis of the settlement's merits is not warranted at the preliminary approval stage.  Instead, a more detailed assessment is reserved for final approval, after class notice has been sent and class members have had the opportunity to object to, or opt out of, the settlement.  *See* Moore's Fed. Prac. ¶ 23.165 (3d ed. 2009).  At the second stage, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e).

## IV.   **ARGUMENT**

### A.   **The Court Should Certify a Settlement Class for Settlement Purposes**

Before granting preliminary approval of a settlement, the Court must determine that the proposed Settlement Class is a proper class for settlement purposes.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Certification is appropriate where the proposed class and the proposed class representative meet the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23(b).

Plaintiff seeks certification of a Settlement Class, pursuant to Rules 23(a) and 23(b)(3), as defined in the Settlement Agreement.  *See* Settlement Agreement § 1.5.  Defendant stipulated to class certification for settlement only.  *Id.* at § 2.1.  For the reasons set out below, all of the required elements of class certification are satisfied.

The Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the

complant as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). This Court has already determined that Plaintiff has stated a claim.  [Doc. No. 39.]

### i.  <u>The requirements of Rule 23(a) are satisfied</u>

Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011).  Under Rule 23(a), the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class

Fed. R. Civ. Proc. 23(a).

### 1.  *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. Proc. 23(a)(1).  If "general knowledge and common sense indicate [the class] is large, the numerosity requirement is satisfied."  1 Newberg & Conte, Newberg on Class Actions, § 3.3 (4th ed.).  Here, Defendant estimates that there are 139,909 class members within the class period. *See* Declarations of John Wolff (the "Wolff Declaration") and Steven J. Powell (the "Powell Declaration").  On that basis alone, the numerosity requirement is satisfied.  The Court's questions regarding the accuracy of the class estimate (Order, p. 2) are addressed in detail in Section IV.B.vii, *infra*.

### 2.  *Commonality*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. Proc. 23(a)(2).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 131

S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).

Class members' claims "must depend upon a common contention . . . that is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2545. "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* at 2551.

Here, the claims of all Class Members depend upon a common contention that Defendant's request for PII allegedly violated Civil Code section 1747.08 and the rights of Plaintiffs and Class Members.  The common questions include: (a) whether each Class Member engaged in a credit card purchase with Defendant; (b) whether Defendant requested the cardholder to provide his or her telephone number and recorded the telephone number of the cardholder during credit card purchase(s) with Class Members; (c) whether Defendant's conduct of requesting the cardholder to provide his or her telephone number during credit card purchase(s) and the recording of the telephone numbers constitutes violations of Civil Code section 1747.08; and (d) whether Plaintiff and the Class are entitled to civil penalties.  Because according to Plaintiff, her claims are based on the same alleged conduct by Defendant, based on Defendant's alleged common practices and procedures, this case involves common factual and legal issues.

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Proc. 23(a)(3).

The Ninth Circuit has observed this standard to be "permissive" and has held that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*,

12

150 F.3d at 1020; *accord Staton*, 327 F.3d at 957. Further, "[t]he test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' [Citation.]." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiff submits that her claims are typical of the other Class Members because she alleges that Defendant requested Plaintiff's PII under the same circumstances as the other Class Members. Defendant is alleged to have a consistent policy and practice of requesting PII from its customers during credit card purchases. As such, Plaintiff's claims are typical of the other Class Members.

### 4. *Adequacy of representation*

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4). In assessing whether this requirement has been met, the court asks: (1) whether the proposed representative plaintiffs and their counsel have conflicts of interest with the proposed class, and (2) whether Plaintiffs are represented by qualified and competent counsel. *See Hanlon*, 150 F.3d at 1020.

Plaintiff submits that she does not have any conflicts with the proposed Class. *See* generally Declaration of Alana Schwartz. Her claim is alleged to be identical to the claims of the other Class Members and allegedly arises from the same violation of the law by Defendant. She has no connection to Defendant, and has no relationship to class counsel other than that of attorney and client. *Id.*

Further, Plaintiff is represented by qualified and competent counsel who have the experience and resources necessary to pursue this action and fairly and adequately protect the interests of the Class. *See* Ryan Decl., ¶¶ 3-4 and Goldman Decl., ¶ 3. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

## ii.   The requirements of Rule 23(b) are satisfied

In addition to meeting the prerequisites of Rule 23(a), a class action must satisfy at least one of the three conditions of Rule 23(b).  Plaintiff submits that the Settlement Class satisfies Rule 23(b)(3).

Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).

Here, Plaintiff contends that her common questions predominate over any individualized inquiries relating to Class Members.  Plaintiff's claim is based upon an alleged common course of conduct undertaken by Defendant, requesting telephone numbers from Defendant's customers under circumstances in which it could reasonably be understood that the provision of the telephone number was necessary to complete the purchase.  This liability issue is common to Plaintiff and all members of the Class – and, in fact, if every Class member were to bring an individual action, they all would be required to prove the existence of the same alleged wrongful course of conduct on the part of Defendant in order to prove liability.

Regarding superiority, the inquiry focuses "'on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal citations omitted). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." Federal Practice and Procedure, § 1779 at p. 174 (2005).

Plaintiff submits that this action easily satisfies such requirements.  The members of the class, should they even learn of a violation, would likely not be

14

interested in undertaking the burden of litigating this case and filing their own individual action, especially where, as here, there is no ability to recover attorney's fees on an individual claim.  As such, this action is appropriate for class certification for settlement purposes.

## B. <u>The Court Should Grant Preliminary Approval</u>

No single criterion is dispositive for whether a class settlement meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See Staton*, 327 F.3d at 959.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id*. at 625 (internal citations omitted).

Where a settlement results from arms' length negotiations after "relevant discovery" there is "a presumption that the agreement is fair." *Linney v. Cellular Ala. Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).  So long as the discovery is sufficient to give the parties a clear view of the relative strengths and weaknesses of their respective cases, it need not be exhaustive.  *See*, *e.g.*, *In re Immune Response Secur. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases).  Notwithstanding any presumptions, the ultimate touchstone is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.

/ / /

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

i.  <u>The settlement terms are fair, adequate an reasonable</u>

Notwithstanding Defendant's vigorous challenges to Plaintiff's allegations and reliance on its defenses (*see*, e.g., Doc. Nos. 13, 35), Plaintiff and her counsel were able to obtain a settlement for every member of the Class that does not require a claim to be made in order to obtain the benefit of the settlement.

All class members who do not opt out of the settlement will receive a $25.00 fully transferrable certificate which will be valid for a credit to be used on a single, in-store purchase of full-price merchandise at any Destination Maternity California standalone retail store, which Destination Maternity owns and operates, namely, Destination Maternity, A Pea in the Pod, and Motherhood Maternity, with no minimum or maximum purchase amount.  The certificate is not be redeemable for cash, in-store credit, or gift cards, and will expire ten (10) months after issuance. *See* Settlement Agreement § 2.2.  In addition, every class member who wishes to be removed from Defendant's mailing lists (i.e., Defendant's mailing list and/or Perks Program database) may request to be removed therefrom by means of a link to a website maintained by the claims administrator.  *Id*.

If Plaintiff were to score an across the board victory, each class member could be awarded a maximum of $250 for the first violation and a maximum of $1,000 for each subsequent violation in the discretion of the Court.  Although the maximum potential recovery is high, there are significant hurdles for Plaintiff to obtain the maximum amount, let alone, any amount for a class.

First, the state of the law on what constitutes a violation continues to be precarious and uncertain.  In a case such as this, which is based on a "request" for PII, the cases are all over the map as to when a violation occurs during a transaction such that the customer would objectively believe that the provision of PII was necessary in order to complete the transaction.  *See*, *e.g.*, *Gass v. Best Buy Co., Inc.*, 279 F.R.D. 561, 571 (C.D. Cal. 2012) (no violation of Act; class certification denied); *Dean v. Dick's Sporting Goods*, 2013 WL 3878946 (C.D.

Cal. July 26, 2013) (summary judgment granted); *Gormley v. Nike, Inc.*, 2013 WL 322538 (N.D. Cal., Jan. 28, 2013) (class certification denied); *Gossoo v. Microsoft Corp.*, 2013 WL 5651271 (C.D. Cal., Oct. 9, 2013) (class certification denied); *Harrold v. Levi Strauss & Co.*, 187 Cal.Rptr.3d 347 (2015).  In fact, the Ninth Circuit recently recognized the problem and certified a question to the California Supreme Court in order to obtain further clarification on when information can be lawfully requested.  *See Davis v. Devanlay Retail Group, Inc.*, 785 F.3d 359 (9th Cir. 2015).

Defendant consistently maintained that it was in compliance with the law and put policies in place before the class period to maintain compliance with the law.  While one could argue, as Plaintiff did, that Defendant's policy of collecting PII still violated the law, Defendant had strong arguments and evidence that the manner and timing in which it requested information did not violate the law.  For example, Plaintiff learned in discovery that Defendant contends its policy calls for its cashiers to request a customer's phone number in order to access his or her account immediately after asking if the customer is a member of the Perks program.  If Defendant proved this at summary judgment, such a request may not be a violation because it could be colorably argued that the cashier is requesting the customer's information in conjunction with their membership in the Perks program.  *See*, *e.g.*, *Gass*, 279 F.R.D. at 566 (cashier would "first inquire whether the customer is a member of the Reward Zone" and would only request the customer's information to look up the his membership if he did not have his membership card with him); *Dean*, 2013 WL 3878946, at *1-2 ("The cashier first asks if the customer is a ScoreCard member . . . If the customer is a member, but does not have his or her membership card or key fob on hand, the cashier then requests that the customer provide [PII] to attempt to match the information to a ScoreCard account in the database.").

Plaintiff's experience was alleged to be different because the cashier did not

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

make any reference to the Perks program whatsoever before requesting her PII. (First Amended Complaint, ¶ 15.)  As such, not only was there significant risk of not establishing liability on a class-wide basis, but Plaintiff's individual experience might defeat class certification. Because of the risk that upon submission of evidence of Defendant's policies in support of summary judgment or opposition to class certification that Plaintiff's claim could fail on liability and/or make class certification more difficult and/or result in an appeal (especially depending on how *Davis* is resolved), the risk of Plaintiff's class claims failing on liability and/or at class certification was extraordinarily high.  Plaintiff weighed the risk of failing on the merits and/or failing to certify a class against the relief that the Class would obtain in this settlement, including the injunctive relief provisions, when agreeing to the Settlement Agreement.  *See In re Portal Software, Inc. Securities Litigation*, 2007 WL 4171201, *3 (N.D.Cal. Nov. 26, 2007) (recognizing that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

Second, the discretionary nature of the potential award to class members renders any recovery uncertain.  If Plaintiff succeeded in proving liability and certifying a class, the matter would be tried to the Court.  The Court would have discretion to award "a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation."  Plaintiff was unable to locate any precedent as to what a Court has awarded as a civil penalty for a violation, nor could Plaintiff find any precedent that award of a nominal penalty was an abuse of the Court's discretion.  Without the benefit of precedent for guidance, Plaintiff looked at orders approving class settlements with certificates similar to the one that the parties bargained for in this case.  While Plaintiff realizes that the Court could award significant civil penalties if she were to prevail at trial, she also recognizes that the Court has the discretion to impose nominal penalties of $1 per violation, or less.  The risk of the

discretionary nature of the penalties, in concert with the risk of losing on liability and/or at the class certification stage, when weighed against the benefits she obtained in the settlement, such as the six-month look back period and the injunctive relief, made the settlement a desirable choice.  *See Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417, *9 (N.D.Cal. Feb. 7, 2008) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial"); *Newberg on Class Actions* § 11.58 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").  Courts must tread cautiously when comparing the amount of a settlement to speculative figures regarding "what damages 'might have been won' had [plaintiffs] prevailed at trial." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (internal citation omitted).  Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Id.*

Plaintiff and her counsel obtained injunctive relief as part of the settlement which requires Defendant to improve training and in-store signage so that customers are made aware that they are not required to provide PII in order to complete a credit card purchase.  Defendant has agreed as part of the settlement to (1) comply with Civil Code section 1747.08 so long as it remains in effect, (2) amend in-store signage in order to provide notice to customers that the provision of PII is not necessary to complete a transaction, and (3) provide its California employees with additional training regarding the requirements of California Civil Code section 1747.08.  *See* Settlement Agreement §§ 2.3, 2.4, 2.5.

Further, the Settlement Agreement contains a release that is specifically limited to claims that were alleged or that could have arisen out of the facts alleged in the Complaint and that were or could have been the basis of claims by Plaintiff

19

or any member of the Settlement Class alleging that Defendant violated California Civil Code section 1747.08.  *See* Settlement Agreement §§ 1.22, 4.4. The release comports with the applicable law, which holds that a class action lawsuit may release all claims "that may arise out of the transactions or events pleaded in the complaint."  *See* Conte & Newberg, 4 Newberg on Class Actions (4th ed.) § 12:15, at 312; *see also Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 16-18 (2d Cir. 1981).

Finally, the Settlement Agreement allows Class Counsel to make an application to the Court for an award of attorneys' fees and costs, which is not part of the settlement to the Class.  Subject to Court approval, Defendant agrees to pay attorneys' fees in the amount of $198,750.00 and costs not to exceed $12,500.00 to Class Counsel.  *See* Settlement Agreement § 2.7.  As for the incentive award, Plaintiff will be allowed to make an application to the Court for an award in the amount of $5,750.00 in recognition for her role in serving as class representative and the attendant risks.  Said amount is subject to Court approval.  *See* Settlement Agreement § 2.6.

Class counsel has experience in serving as plaintiff's counsel in class action and they believe the foregoing provisions are fair, adequate and reasonable, especially compared to other approved class action settlements involving similar Song-Beverly Act violations.  *See*, *e.g.*, *Chaikin v. Lululemon USA Inc.*, 2014 WL 1245461 (S.D. Cal., Mar. 17, 2014) (approving $25.00 merchandise certificates that expired in 6 months to 3,509 class members; $155,000 in attorney's fees); *Morey v. Louis Vuitton North America, Inc.*, 2014 WL 109194 (S.D. Cal., Jan. 9, 2014) (approving $41.00 merchandise certificate in claims-made settlement for 23,876 individuals; $375,000 in costs and fees); *Dardarian v. OfficeMax North America, Inc.*, 2014 WL 7463317 (N.D. Cal., Dec. 30, 2014) (approving $5.00 and $10.00 merchandise certificate in claims-made settlement ; $200,000 in costs and fees); *Seebrook v. Children's Place Retail Stores, Inc.*, 2013 WL 6326487 (N.D.

20

Cal., Dec. 4, 2013) (approving $10 merchandise certificate and 35% off voucher; $335,000 in costs and fees).

### ii. The Settlement Agreement resulted from arm's-length negotiations

On December 10, 2014, the parties conducted a full-day mediation before the Hon. Edward Infante (Ret.) of JAMS.  The parties negotiated and agreed upon the terms of the settlement for the Class before discussing class counsel's fees and costs and the incentive award.  Ryan Decl., ¶10.  The parties had several follow-up calls with Judge Infante in an effort to resolve the entire dispute.  Eventually, after adversarial, non-collusive and arms-length negotiations through the assistance of Judge Infante, the parties reach a resolution, which is reflected in the Settlement Agreement.  Settlements reached with the help of a mediator are likely non-collusive.  *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### iii. The factual record was sufficiently developed

Prior to settlement, the parties engaged "in sufficient investigation of the facts to enable the court to intelligibly make an appraisal."  *Polar Int'l Brokerage Corp. v. Reese*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999) (internal quotations omitted).

Prior to reaching the proposed settlement, the parties exchanged significant amounts of information.  First, prior to filing the lawsuit, Plaintiff, through counsel conducted an investigation into Defendant's practice of collecting PII.  Plaintiff, through counsel, also hired an investigator to conduct an investigation into Defendant's practice of collecting PII while the litigation was pending.  Second, the parties engaged in informal settlement discussions in May and June 2014, which included the informal exchange of documents and exchange of information by telephone regarding Defendant's policies and practices of collecting PII.  Third, through Defendant's answer, Defendant provided its defenses and factual

AMENDED MOTION FOR PRELIMINARY APPROVAL

assertions to Plaintiff's allegations.  Fourth, Defendant provided its Initial

Disclosures in September 2014.  Fifth, Defendant provided responses to

interrogatories and documents requests, as well as documents, in November 2014.

Sixth, Defendant confidentially provided additional information in connection with

the mediation, including class list information.  Based on the factual investigation

and the analysis of the case law regarding Song-Beverly Act violations, counsel for

both parties were well prepared to negotiate and enter into the proposed settlement.

> iv.   <u>The rationale for settling this matter instead of pursuing further</u>

<u>litigation</u>

The reasons Plaintiff settled this matter instead of pursuing further litigation

are numerous.  As explained above, Defendant mounted significant challenges to

Plaintiff's allegations and raised a host of defenses, not only to liability, but also to

class certification.  The primary argument that Defendant advanced for a denial of

class certification focused on whether Plaintiff's individual experiences would be

problematic for certification purposes.  While Plaintiff believed that her individual

experiences shopping with Defendant were not so individualized as to prevent

class certification, the risk of not being able to certify the class was significant

enough that Plaintiff believed the Class would benefit from a settlement in order to

obtain a benefit rather than potentially obtain nothing.

v.   <u>The Certificates are not "coupons" under CAFA</u>

The Court queried whether the $25 certificates are "coupons" within the

meaning of CAFA for purposes of determining the reasonableness of the attorneys'

fees requested, and, if so, the likelihood that the certificates will be used.  *See*

Order, p. 3.

The Certificates are not "coupons" under CAFA.  Recently, Judge Wilken of

the Northern District of California dealt with a nearly identical class action

settlement for a violation of the Act.  In that case, the Court had to decide whether

the terms of the settlement which provided that class members receive the choice

22

of a transferrable ten dollar merchandise certificate with no minimum purchase required *or* a thirty-five percent off voucher at Defendant The Children's Place Retail Stores, Inc. qualified as a coupon settlement, thus triggering the provisions of 28 U.S.C. § 1712. *Seebrook v. Children's Place Retails Stores, Inc.*, 2013 WL 6326487 (N.D. Cal., Dec. 4, 2013). The Court analyzed the certificate and the vouchers separately. With respect to the 35-percent voucher, the Court stated it was "indisputably a coupon." *Id*. at *1. The Court went on to decide whether the ten-dollar gift merchandise certificate was a coupon. After analyzing the relevant law and similar cases, the Court held that it was not a coupon because the certificate gave the class members the "opportunity to receive free merchandise, as opposed to merely discounted merchandise." *Id*. at 2 (citing *Foos v. Ann, Inc.*, 2013 WL 5352969, *3 (S.D.Cal., Sept. 24, 2013)). The certificate was not a coupon because it did not require class members to spend money in order to realize the settlement benefit. *Id*. The Court pointed out that much of the merchandise at Children's Place stores could be purchased at ten dollars or less and class members did not need to spend money in order to realize the settlement benefit. *Id*.; *see also Morey v. Louis Vuitton North America, Inc.*, 2014 WL 109194 (S.D. Cal., Jan. 9, 2014) ($41.00 merchandise certificate not a "coupon" under CAFA because the class member would be able to use the certificate to obtain free merchandise and would not be required to spend any additional money in order to realize the benefit of the settlement); *In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934 (9th Cir. 2015) (Walmart gift card not a "coupon"; giving class members not only the ability to purchase an entire product as opposed to simply reducing the purchase price, but also the ability to purchase one of many different types of products); *cf. True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1069 (C.D. Cal. 2010) ("coupon" where primary relief offered was $500 or $1000 rebate given to class members who purchased another Honda or Acura within next nineteen months).

The Certificate in this case is not a coupon for the same reasons it was not

AMENDED MOTION FOR PRELIMINARY APPROVAL

one in *Seebrook*, *Morey* and *In re Online DVD-Rental Antitrust Litigation*.  Here, the Certificate gives the customer an opportunity to receive free merchandise as opposed to a discount on merchandise.  Likewise, a class member does not need to spend money or buy a particular item in order to realize the settlement benefit.

Plaintiff believes that there is a high likelihood that the Certificate will be used or redeemed for several reasons.  First, of the approximately 806 different items (i.e., Stock Keeping Units ["SKUs"]) that can be purchased at the vast majority of Defendant's stand-alone California retail locations, approximately 480 individual items can be purchased for $25.00 or less, or approximately 60 percent. *See* Declaration of Kristen Lamb Diamond.  There are many more items at locations outside of California that are offered for $25.00 or less.  *Id*.  Second, the Certificate is fully transferrable, which means that it can be gifted, traded or sold without any restriction.  Therefore, even if the Class member does not have the ability to use the certificate, i.e., for example, her child has already been born, the Certificate can be given to someone else who is expecting or sold on Craigslist or EBay at a monetary value.  While Plaintiff does not have an estimate of what a Certificate would go for on the open market, it presumably has some cash value.  Likewise, the Certificate can be used to purchase a gift for another expecting mother.  Third, although the Certificates expire in 10 months, that is a significant amount of time within which to make a purchase.

### vi.   The proposed notice to Class Members is adequate

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Notice to the class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. Proc. 23(c)(2)(B); *see also Amchem Prods*, 521 U.S. at 617.

The Class Members can be identified and located from Defendant's records.

24

Defendant will compile a class list as part of the Settlement Agreement and provide the list to the claims administrator.  *See* Settlement Agreement § 3.2.

To alert Class Members of their rights under the Settlement, the Settlement Agreement provides for a comprehensive notice program that allows for notice to be sent by email or by regular mail depending on the contact information that is maintained by Defendant.  *See* Settlement Agreement § 3.2.

The notice must contain the following information:  (1) the nature of the action; (2) the definition of the class; (3) the class claims, issues, or defenses; (4) that any class member may appear at the fairness hearing through an attorney; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a judgment on class members.  Fed. R. Civ. Proc. 23(c)(2)(B).  The notices provide this information.  *See* Settlement Agreement § 3.2 & Exhs. 2, 3.

The notice requirements are designed to ensure Class Members receive notice of the foregoing items and should be deemed sufficient to provide individual notice to each of them.  With respect to class members who do not have an email address, the claims administrator will conduct a national change of address search and send a direct mail notice to them.  For those class members who have provided an email address to Defendant, they will receive an email notice which will include a link to the claims administrator's internet site, which will contain the full class notice and Settlement Agreement.  In the event any emails notices that are sent are returned undeliverable, then the claims administrator will send direct mail notice after conducting a national change of address search.  *See* Settlement Agreement § 3.2 (a)-(d).

vii.  <u>Defendant's Business Records Are Sufficiently Precise to Determine Class Membership</u>

In response to the Court's request for "reassurance that Defendant's business records are sufficiently precise to determine who is or is not a Class Member

without arbitrarily including or excluding anyone," (Order, p. 2), Plaintiff has attached to this motion the Wolff Declaration and the Powell Declaration to explain the source and accuracy of the class data and estimate.

The Wolff Declaration, provided by the Director of Data Architecture for Defendant, describes the source of the data that formed the basis of the class estimate. That data was produced from Destination's electronic system of records, describing transactions in its California retail stores. Wolff Decl., ¶ 2. The data included information regarding transactions by Perks members or magazine subscribers. *Id.*, ¶ 3. The data included information required to determine membership in the class, specifically: (1) the date of each transaction; (2) the identity of the customer that engaged in the transaction; (3) whether the transaction involved a purchase, return, exchange, and/or shipment of merchandise; (4) whether a person subscribed to a magazine during the transaction; and, (5) whether the transaction involved a credit card or some other form of payment. *Id.*, ¶ 4. Mr. Wolff testifies that Destination's system accurately reflects the information provided by each customer, though Destination does not independently verify whether its customers provide it with accurate information. *Id.*, ¶ 5.

The Powell Declaration provides sworn testimony by an employee of Gilardi, the claims administrator in this matter. Mr. Powell testifies that Gilardi received data from counsel spanning the relevant period of July 15, 2012, to June 10, 2015. Powell Decl., ¶ 3. He describes the four types of data that Gilardi received, and the information included in each data set, including customer information, order identifying information, transaction dates, payment type, whether the transaction involved a return or exchange, shipping information, and whether a transaction involved a subscription to a magazine. *Id*., ¶ 4. Mr. Powell further testifies that Gilardi analyzed the data in order to obtain a full and complete class list by, among other things, limiting its estimate to those potential class members who had at least two transactions, the latter of which constituted a

"Qualifying Purchase" under the Act, including that it is a credit card purchase that did not involve a return or exchange of merchandise.  *Id.*, ¶¶ 5-6.  Using an algorithm that it created for this analysis, Gilardi analyzed (1) how many times each customer shopped at Destination; (2) the date and the method of payment during each of these transactions; and (3) whether the relevant transactions involved a return, exchange, shipment of goods, or subscription for a magazine.  *Id.*, ¶ 8.  Using that information, Gilardi was able to produce an estimate of 139,909 class members.

/ / /

/ / /

/ / /

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

## C.   Plaintiff Requests That The Court Set a Final Approval Hearing Schedule

Plaintiff proposes the following schedule for final approval of the settlement, which is based on the Court's May 18, 2015 Order:

| | | |
|---|---|---|
| Last day for Defendant to provide claims administrator with class list | 14 calendar days after preliminary approval | August 3, 2015 |
| Last day for claims administrator to mail and e-mail notice to Class Members | 30 calendar days after preliminary approval | August 19, 2015 |
| Last day for Class Counsel to file motions(s) for final approval of settlement, Plaintiff's incentive award and application for attorneys' fees and costs and post same on class administrator website | 30 calendar days after preliminary approval | August 19, 2015 |
| Plaintiff to certify to Court of compliance with notice requirements | 45 calendar days after preliminary approval | September 3, 2015 |
| Requests for exclusion must be postmarked | 40 calendar days after Notice sent | September 28, 2015 |
| Objections to settlement and notices of intention to appear at final approval hearing must be postmarked | 40 calendar days after Notice sent | September 28, 2015 |

**AMENDED MOTION FOR PRELIMINARY APPROVAL**

| Plaintiff to file a joint list of Class Members who have filed timely requests for exclusion | 105 calendar days of preliminary approval | November 2, 2015 |
|---|---|---|
| Parties to file papers in support of final approval and respond to any objections | 105 calendar days of preliminary approval | November 2, 2015 |
| Hearing on final approval and application for incentive award and attorney's fees and costs | 120 days after preliminary approval | November 23, 2015 |

## V.   **CONCLUSION**

Plaintiff respectfully requests that the Court grant conditional certification and preliminary approval of the settlement, as set forth in the proposed Order submitted herewith.


DATED: June 17, 2015                 JAMES T. RYAN, PC
                                     LAW OFFICE OF KENNETH A. GOLDMAN, PC


                            By:   /s/ James T. Ryan
                                  JAMES T. RYAN, Esq.
                                  Attorney for Plaintiff, ALANA SCHWARTZ