James T. Ryan, Esq. (SBN 210515)
JAMES T. RYAN, PC
1110 Glenville Drive #307
Los Angeles, California 90035
Phone: (310) 990-2889
jr@jamestryan.com

Kenneth A. Goldman, Esq. (SBN 250941)
LAW OFFICE OF KENNETH A. GOLDMAN, PC
15300 Ventura Boulevard, Suite 207
Sherman Oaks, California 91403
Phone: (818) 287-7689
Facsimile: (818) 287-7816
ken@kengoldmanlaw.com

For Plaintiff Alana Schwartz
and other persons similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALANA SCHWARTZ**, individually and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**DESTINATION MATERNITY CORPORATION** and **DOES 1-20**,<br><br>Defendants. | Case No.:  14-CV-01477-GHK-FFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Declaration of James T. Ryan, Esq. filed concurrently]**<br><br>Date:              December 7, 2015<br>Time:              9:30 a.m.<br>Courtroom:     650<br>Before the Honorable George H. King |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at 9:30 a.m. on December 7, 2015, or as soon thereafter as the matter may be heard United States District Court for the Central District of California, Courtroom 650, located at 255 East Temple Street, Los Angeles, California 90012-3332, before the Honorable George H. King, Plaintiff Alana Schwartz ("Plaintiff"), individually and on herself and all others similarly situated, will and hereby does move the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Order of July 20, 2015 granting preliminary approval, for an order finally approving the class action settlement in this case.

This motion is made on the grounds that the proposed settlement is fair, adequate, and reasonable; that the Full Class Notice, the Summary Direct U.S. Mail Notice, and the Summary Direct Email Notice complied with applicable legal standards; and that the Settlement Class satisfies the requirements for class certification.

This motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the declarations of Class Counsel, the pleadings and papers on file herein, and upon such additional evidence or argument as may be accepted by the Court at or prior to the hearing on this motion.

DATED: August 19, 2015        JAMES T. RYAN, PC
                                      LAW OFFICE OF KENNETH A. GOLDMAN, PC


By:   /s/ James T. Ryan          
             JAMES T. RYAN, Esq.
             Attorney for Plaintiff, ALANA SCHWARTZ

1

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................ 1

II.  SUMMARY OF ARGUMENT ........................................................... 2

III. BACKGROUND INFORMATION .................................................... 3

    A.   Nature of Case ........................................................................ 3

    B.   Procedural History .................................................................. 3

    C.   Mediation resulting in settlement ........................................... 4

    D.   Summary of Settlement Terms ................................................ 4

        *i.*     *Settlement class definition* ......................................... 4

        *ii.*    *Past Settlement Relief* ............................................... 5

        *iii.*   *Class period and release of claims* ............................ 5

        *iv.*    *Injunctive relief* ........................................................ 5

    E.   Claims Administration ............................................................ 6

        *i.*     *Work completed to date* ............................................ 6

        *ii.*    *Work to be completed* ............................................... 6

IV.  ARGUMENT ...................................................................................... 7

    A.   Standards for Final Approval .................................................. 7

    B.   The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness. ................................................................................... 8

        *i.*     *The Strength of Plaintiff's Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation* .................................................................... 8

        *ii.*    *The Risk of Maintaining Class Action Status Throughout the Trial* ...................................................................... 12

        *iii.*   *The Relief Offered in the Settlement* ........................ 12

        *iv.*    *The Extent of Discovery Completed and Stage of Proceedings* ............................................................. 14

        *v.*     *The Experience and Views of Counsel* ..................... 14

        *vi.*    *The Presence of a Governmental Participant* .......... 15

i

       *vii.*   *The Reaction of Class Members to the Settlement* ...................15

**D.**   **The Notice Plan Complied with Applicable Legal Standards.** .........................................................................15

       *i.*   *Implementation of Notice* ...........................................15

       *ii.*   *Form and Content of Notice* .....................................16

**E.**   **The Claims Process Is Fair, Necessary, and Reasonable.** ............16

**F.**   **The Settlement Class Satisfies the Requirements of Rule 23.** ........17

**V.**   **CONCLUSION** .........................................................................17

**MOTION FOR FINAL APPROVAL**

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...........................................16

*Burden v. SelectQuote Ins. Servs.*, 2013 WL 1190634 (N.D. Cal. Mar. 21, 2013).16

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) .................2, 7, 8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)............................7

*Davis v. Devanlay Retail Group, Inc.*, 785 F.3d 359 (9th Cir. 2015) ................9, 10

*Dean v. Dick's Sporting Goods*, 2013 WL 3878946 (C.D. Cal. July 26, 2013) .9, 10

*Gass v. Best Buy Co., Inc.*, 279 F.R.D. 561 (C.D. Cal. 2012)...........................9, 10

*Gormley v. Nike, Inc.*, 2013 WL 322538 (N.D. Cal., Jan. 28, 2013) ......................9

*Gossoo v. Microsoft Corp.*, 2013 WL 5651271 (C.D. Cal., Oct. 9, 2013)...............9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................7

*Harrold v. Levi Strauss & Co.*, 187 Cal.Rptr.3d 347 (2015) ..................................9

*In re Optical Disk Drive Antitrust Litig.*, 2013 WL 2289977 (N.D. Cal. Mar. 22, 2013)........................................................................................................................16

*In re Portal Software, Inc. Securities Litigation*, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)......................................................................................................10

*Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008)..........11

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) .....................................14

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th. Cir. 2012) ........................................2, 7

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..........................11

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ..........................15

*Mullane v. Central Hanover Bank & Trust Co.*, 229 U.S. 306 (1950) ..................16

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................................................2, 8, 15

*Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981)........................................................................................................................13

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615 (9th Cir. 1982)........................................................................................................................8

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ........................7, 8

**MOTION FOR FINAL APPROVAL**

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976)...............................7

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)................................14

<u>Statutes</u>

Civil Code section 1747.08.................................................................3, 5, 6, 13

Fed. R. Civ. P. 23 .................................................................................2, 15, 16

<u>Other Authorities</u>

Conte & Newberg, 4 Newberg on Class Actions (4th ed. 2010) ("Newberg") § 12:15 ...................................................................................................11, 13

Conte & Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2011) ..................8

MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004)..............................17

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Alana Schwartz, individually and as a representative for Class Members, seeks final approval of a settlement in this matter, which would completely resolve the case.  Defendant Destination Maternity Corporation ("Defendant") does not oppose this motion.

This motion represents the final step in resolving litigation between a class of consumers and Defendant concerning the alleged improper collecting of personal identification information ("PII") (e.g., telephone numbers) as a condition for the use of a credit card to make a purchase.  After hard fought litigation, the parties reached a settlement after lengthy negotiations, including a formal mediation session with Hon. Edward Infante (Ret.) and numerous settlement discussions outside of formal mediation.

The Court granted preliminary approval of the settlement in its July 20, 2015 Order (Doc. No. 60).  The Court found that the Settlement Agreement fell within the necessary range of an appropriate settlement.  *Id.* at p. 2 (¶ 2).[1]  The Court also approved the form, content, and delivery of notice to class members by the approved Claims Administrator; set out the schedule for notice, objections, and final approval; and appointed Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel.  *See id.* at pp. 2-7 (¶¶ 2-17).

Class Counsel and the Claims Administrator subsequently embarked on a successful notice campaign and distribution of the certificates.  Accordingly, Plaintiff now moves the Court to finally approve the Settlement Agreement and conclude this litigation.

---

[1] The Class Action Settlement Agreement and Release (the "Settlement Agreement") was attached as Exhibit 1 to the Declaration of James T. Ryan filed in support of Plaintiff's Motion for Preliminary Approval.  (Doc. No. 58-1.)

1

## II.   **SUMMARY OF ARGUMENT**

The Settlement Agreement is fair, adequate, and reasonable, as required by Federal Rule of Civil Procedure 23.  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th. Cir. 2012).  As an initial matter, the settlement was not reached through fraud, overreaching, or collusion by the negotiating parties, and therefore is entitled to a presumption of fairness.  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  On the merits, the settlement directly addresses the Class Members' concerns with Defendant's practicing of requesting and recording telephone numbers from customers, which were obtained and maintained in Defendant's database, by: (1) providing past relief to eligible Class Members in the form of a $25.00 transferable certificate; and (2) providing prospective relief to all consumers in the form of a permanent change in Defendant's business practices, including that Defendant will place signs at its points of sale informing customers of their privacy rights and Defendant will now comply with Civil Code section 1747.08.  This is an exceptional result for the Class, especially in light of Defendant's considerable defenses in this case.

Class Counsel expects that the settlement will have a positive reaction from the Class Members.  As provided for in the Court's July 20, 2015 Order granting preliminary approval, Plaintiff shall file a report of class members seeking exclusion and responses to any objections before the hearing on final approval.  *See* Doc. No. 60 at pp. 6-7 (¶¶ 15-16).  In light of the factors courts must weigh when evaluating the fairness of a settlement, *see Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), final approval of the Settlement Agreement in this case is warranted.

The notice plan approved by the Court also constituted "the best notice that is practicable under the circumstances."  Fed. R. Civ. Proc. 23(c)(2)(B).  It involved direct mail notice and email notice to Class Members.

The claims method was also appropriate here.  The settlement provided for

2

automatic relief for Class Members while also providing Class Members with a simple mechanism to request exclusion from or object to the settlement.

Finally, in granting preliminary approval, the Court conditionally certified the Class. *See id.* at p. 2 (¶ 2(a)). Plaintiff submits that the Class satisfies all the requirements for certification under Rule 23 and requests that the Court grant final approval on behalf of the Class.

## III.   BACKGROUND INFORMATION

### A. Nature of Case

This class action arises from violations of California Civil Code section 1747.08 (California's Song-Beverly Credit Card Act of 1971) (the "Act") which, generally speaking, prohibits a retailer from collecting PII as a condition for the use of a credit card to make a purchase. Plaintiff alleges in her First Amended Complaint that Defendant violated Civil Code section 1747.08 when it requested and recorded telephone numbers from customers, which were obtained and maintained in Defendant's database. The class period reaches back to January 15, 2013. Defendant denies all liability and denies that it engaged in any wrongdoing.

### B. Procedural History

The original Complaint was filed on January 15, 2014 in the Los Angeles Superior Court. On February 27, 2014, Defendant removed the case pursuant to the Class Action Fairness Act. Thereafter, Defendant moved to dismiss the Complaint and moved to strike portions of the Complaint, including the class action allegations. On April 30, 2014, the Court dismissed Plaintiff's claim with leave to amend and entered other orders narrowing the relief sought. Plaintiff filed a First Amended Complaint and Defendant filed another motion to dismiss and to strike. On August 4, 2014, the Court denied Defendant's motion in part and granted it in part. Defendant answered on August 19, 2014, and raised eleven affirmative defenses.

Defendant provided its Initial Disclosures on September 26, 2014.

**MOTION FOR FINAL APPROVAL**

Thereafter, Plaintiff propounded interrogatories and document requests on myriad issues relating to merits and class issues.  Defendant provided substantive responses to written discovery and documents on November 24, 2014.

### C. **Mediation resulting in settlement**

On October 20, 2014, the Court ordered that the parties complete early mediation by December 15, 2014.  On December 10, 2014, the parties conducted a full-day mediation before the Hon. Edward Infante (Ret.) of JAMS.  The parties had several follow-up calls with Judge Infante in an effort to resolve the dispute.  Eventually, after adversarial, non-collusive and arms-length negotiations through the assistance of Judge Infante, the parties reach a resolution, which is reflected in the Settlement Agreement.

### D. **Summary of Settlement Terms**

#### i.  *Settlement class definition*

The settlement Class consists of the following:

> All members of Destination's "Perks" Program and/or persons who subscribed through Destination to *Parents* or *Parenting* magazines who made at least two transactions at a Destination retail location(s) within California during the period of July 15, 2012 through the date that the Court enters the Preliminary Approval Order, the second or subsequent transaction(s) of which consisted of a credit card purchase transaction(s) without simultaneous merchandise exchange or return that occurred during the period of January 15, 2013 through the date that the Court enters the Preliminary Approval Order.

> Excluded from the Class are: (1) persons whose provision of personal identification information to Destination at the time of the second or subsequent credit card purchase(s) was made in conjunction with (a) supplying shipping information for merchandise purchased during the transaction, (b) arranging delivery of merchandise purchased during the transaction, (c) servicing of merchandise purchased during the transaction, or (d) a special order; and (2) officers and directors of Defendants and of their corporate parents, subsidiaries, affiliates, or any entity in which Defendants have a controlling interest, and the legal representatives, successors, or assigns of any such excluded persons or

4

entities.

### ii.  Past Settlement Relief

Every member of the Class who does not opt-out will automatically receive a $25.00 transferable certificate that shall be valid for a credit to be used on a single, in-store purchase of full-price merchandise at any Destination Maternity California standalone retail store, which Defendant owns and operates, i.e., Destination Maternity, A Pea in the Pod, and Motherhood Maternity, with no minimum or maximum purchase amount (the "Certificate").  The Certificate shall expire ten (10) months after issuance.

In addition, every Class Member will be provided with the opportunity to be removed from the mailing lists maintained by Defendant by way of a link to a website maintained by the claims administrator.

### iii.  Class period and release of claims

The class period reaches back to January 15, 2013 and extends to the date of final approval.  There is also a six-month look back period prior to January 15, 2013, which allows for subsequent transactions to count for purposes of obtaining the Certificate.

### iv.  Injunctive relief

Defendant agrees to injunctive relief, which takes several forms.  First, Defendant agrees to amend in-store signage in its California retail locations regarding its Perks Program, which includes placing prominent signs in stores that informs customers that they are not required to provide their personal identification information in order to process their credit card purchases.  Second, Defendant agrees to provide its California employees who process in-store credit card purchase transactions with additional training regarding the requirements of California Civil Code section 1747.08, including regular reminders and training manuals that will include instructions that Destination employees cannot request PII from customers in a manner where the customer may reasonably perceive the

**MOTION FOR FINAL APPROVAL**

provision of PII as a condition for the use of a credit card in a purchase transaction. Third, Defendant agrees to comply with Civil Code section 1747.08 so long as it remains in effect.

### E. Claims Administration

#### i. Work completed to date

Between May 1, 2015 and July 21, 2015, Defendant provided data to the Claims Administrator containing the Class List.  *See* Doc. No. 60 at pp. 3-4 (¶ 5).

On August 19, 2015, the Claims Administrator website went "live."  *See id.* at p. 4 (¶ 10).

On August 19, 2015, the Claims Administrator sent the Summary Direct E-Mail Notice to each Class Member for whom Defendant has an email address.  *See id.* at p. 4 (¶ 7).

On August 19, 2015, the Claims Administrator sent the Summary Direct U.S. Mail Notice to each Class Member for whom Defendant has a physical mailing address and does not have an email address.  *See id.* at p. 4 (¶ 8).

#### ii. Work to be completed

The deadline for Class Members to request exclusion is September 28, 2015, which is 40 calendar days after the Claims Administrator sent notice.  *See id.* at p. 5 (¶ 12).

The deadline for Class Members to object is September 28, 2015, which is 40 calendar days after the Claims Administrator sent notice.  *See id.* at pp. 5-6 (¶¶ 13-14).

By November 2, 2015, which is 105 days from the Court's July 20, 2015 Order granting preliminary approval, Class Counsel shall file a list of Class Members who have requested exclusion and any other papers in support of final approval, including responses to any objections.  *See id.* at pp. 6-7 (¶¶ 15-16).

///

///

**MOTION FOR FINAL APPROVAL**

## IV.  ARGUMENT

### A. Standards for Final Approval

The law favors the compromise and settlement of class action lawsuits. *See Churchill Vill.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Indeed, "there is an overriding public interest in settling and quieting litigation" and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The decision to approve or reject a settlement is committed to the sound discretion of the trial court because it "is exposed to the litigants and their strategies, positions and proof." *Lane*, 696 F.3d at 818 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

However, in exercising such discretion, the trial court should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. "[T]he court's intrusion upon what is otherwise a private consensual agreement . . . must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*

In determining whether a class action settlement is fair, adequate, and reasonable, district courts in the Ninth Circuit balance the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (holding that only one factor was necessary to demonstrate that the district court was acting within its discretion in approving the

**MOTION FOR FINAL APPROVAL**

settlement).  This list is not exclusive, and different factors may predominate in different factual contexts.  *Torrisi*, 8 F.3d at 1375-76 (citing *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

### B.  <u>The Settlement Was Not Procured by Fraud, Overreaching, or Collusion and Is Therefore Entitled to a Presumption of Fairness.</u>

Before approving a class action settlement, the trial court must be satisfied that the agreement is not the product of fraud, overreaching, or collusion.  Where a settlement is reached following discovery and arm's-length negotiations, it is presumed to be fair.  Conte & Newberg, Newberg on Class Actions, § 11.41 (4th ed. 2011); *Nat'l Rural Telecomm.*, 221 F.R.D. at 528.

The settlement here was achieved following numerous arm's-length negotiations between the parties.  Again, the parties conducted a full-day mediation before the Hon. Edward Infante (Ret.) of JAMS and had several follow-up calls with Judge Infante in an effort to resolve the entire dispute.  Eventually, after adversarial, non-collusive and arms-length negotiations through the assistance of Judge Infante, the parties reach a resolution, which is reflected in the Settlement Agreement.

Overall, the Settlement Agreement was achieved only after many months of intensive work and corroboration by counsel.  It was not the product of fraud, overreaching, or collusion by the parties, and as a result, is presumptively fair.

### C.  <u>The Settlement is Fair, Adequate, and Reasonable.</u>

In evaluating the Settlement Agreement, the Court must balance the factors set forth in *Churchill Village*, 361 F.3d at 575.  As shown below, consideration of the relevant *Churchill* factors supports final approval of the Settlement Agreement in this case.

*i.  The Strength of Plaintiff's Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation*

If Plaintiff were to score an across the board victory, each class member

8

could be awarded a maximum of $250 for the first violation and a maximum of $1,000 for each subsequent violation in the discretion of the Court.  Although the maximum potential recovery is high, there are significant hurdles for Plaintiff to obtain the maximum amount, let alone, any amount for a class.

First, the state of the law on what constitutes a violation continues to be precarious and uncertain.  In a case such as this, which is based on a "request" for PII, the cases are all over the map as to when a violation occurs during a transaction such that the customer would objectively believe that the provision of PII was necessary in order to complete the transaction.  *See*, *e.g.*, *Gass v. Best Buy Co., Inc.*, 279 F.R.D. 561, 571 (C.D. Cal. 2012) (no violation of Act; class certification denied); *Dean v. Dick's Sporting Goods*, 2013 WL 3878946 (C.D. Cal. July 26, 2013) (summary judgment granted); *Gormley v. Nike, Inc.*, 2013 WL 322538 (N.D. Cal., Jan. 28, 2013) (class certification denied); *Gossoo v. Microsoft Corp.*, 2013 WL 5651271 (C.D. Cal., Oct. 9, 2013) (class certification denied); *Harrold v. Levi Strauss & Co.*, 187 Cal.Rptr.3d 347 (2015).  In fact, the Ninth Circuit recently recognized the problem and certified a question to the California Supreme Court in order to obtain further clarification on when information can be lawfully requested.  *See Davis v. Devanlay Retail Group, Inc.*, 785 F.3d 359 (9th Cir. 2015).

Defendant consistently maintained that it was in compliance with the law and put policies in place before the class period to maintain compliance with the law.  While one could argue, as Plaintiff did, that Defendant's policy of collecting PII still violated the law, Defendant maintained strong arguments and offered evidence suggesting that the manner and timing in which it requested information may not violate the law.  For example, Plaintiff learned in discovery that Defendant contends its policy calls for its cashiers to request a customer's phone number in order to access his or her account immediately after asking if the customer is a member of the Perks program.  If Defendant proved this at summary

9

judgment, it may not be a violation because it could be colorably argued that the cashier is requesting the customer's information in conjunction with their membership in the Perks program.  *See*, *e.g.*, *Gass*, 279 F.R.D. at 566 (cashier would "first inquire whether the customer is a member of the Reward Zone" and would only request the customer's information to look up the his membership if he did not have his membership card with him); *Dean*, 2013 WL 3878946, at *1-2 ("The cashier first asks if the customer is a ScoreCard member . . . If the customer is a member, but does not have his or her membership card or key fob on hand, the cashier then requests that the customer provide [PII] to attempt to match the information to a ScoreCard account in the database.").

Plaintiff's experience was different because the cashier did not make any reference to the Perks program whatsoever before requesting her PII.  (First Amended Complaint, ¶ 15.)  As such, not only was there significant risk of not establishing liability on a class-wide basis, but Plaintiff's individual experience might defeat class certification.  Because of the risk that upon submission of evidence of Defendant's policies in support of summary judgment or opposition to class certification that Plaintiff's claim could fail on liability and/or make class certification more difficult and/or result in an appeal (especially depending on how *Davis* is resolved) the risk of Plaintiff's class claims failing on liability and/or at class certification was extraordinarily high.  Plaintiff weighed the risk of failing on the merits and/or failing to certify a class against the relief that the Class would obtain in this settlement, including the injunctive relief provisions, when agreeing to the Settlement Agreement.  *See In re Portal Software, Inc. Securities Litigation*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

Second, the discretionary nature of the potential award to class members.  If Plaintiff succeeded in proving liability and certifying a class, the matter would be

10

tried to the Court, not a jury. The Court would have discretion to award "a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation." Plaintiff was unable to locate any precedent as to what a Court has awarded as a civil penalty for a violation, nor could Plaintiff find any precedent that award of a nominal penalty was an abuse of the Court's discretion. Without the benefit of precedent for guidance, Plaintiff looked at orders approving class settlements with certificates similar to the one that the parties bargained for in this case. While Plaintiff realizes that the Court could award significant civil penalties if she were to prevail at trial, she also recognizes that the Court has the discretion to impose nominal penalties of $1 per violation, or less.

The risk of the discretionary nature of the penalties, in concert with the risk of losing on liability and/or at the class certification stage, when weighed against the benefits she obtained in the settlement, such as the six-month look back period and the injunctive relief, made the settlement a desirable choice. *See Jaffe v. Morgan Stanley & Co.*, 2008 WL 346417, *9 (N.D. Cal. Feb. 7, 2008) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial"); *Newberg on Class Actions* § 11.58 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

Courts must tread cautiously when comparing the amount of a settlement to speculative figures regarding "what damages 'might have been won' had [plaintiffs] prevailed at trial." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citation omitted). Indeed, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Id.*

**MOTION FOR FINAL APPROVAL**

1

2

*ii. The Risk of Maintaining Class Action Status Throughout the*
   *Trial*

3

4

5

6

7

8

As they detailed in the Motion for Preliminary Approval (Doc. No. 58), Plaintiff contends that this action could be maintained as a class action.   Plaintiff believes this case satisfies the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and 23(b)(3)—predominance. *Id.* at pp. 10-14.  At the same time, Plaintiff recognizes that there are challenges in this case to class certification, particularly under Rule 23(b)(3).

9

10

11

12

13

Defendant's primary argument against class certification would be that substantial individualized questions preclude predominance of common questions of law or fact.  Aside from the merits, this issue would likely be one of the most critical in the case.  Although Plaintiff is confident she could prevail on this issue, the risk of maintaining class action status in this case is significant.

14

*iii. The Relief Offered in the Settlement*

15

16

17

18

19

20

Notwithstanding Defendant's vigorous challenges to Plaintiff's allegations and reliance on its defenses (see, e.g., Doc. Nos. 13, 35), Plaintiff and her counsel were able to obtain a settlement for every member of the Class that does not require a claim to be made in order to obtain the benefits of the settlement.  The Settlement Agreement provides substantial past and prospective relief to Class Members.

21

22

23

24

25

26

27

All class members who do not opt out of the settlement will receive a $25.00 fully transferrable certificate which will be valid for a credit to be used on a single, in-store purchase of full-price merchandise at any Destination Maternity California standalone retail store, which Destination Maternity owns and operates, namely, Destination Maternity, A Pea in the Pod, and Motherhood Maternity, with no minimum or maximum purchase amount.  The certificate is not be redeemable for cash, in-store credit, or gift cards, and will expire ten (10) months after issuance.

28

**MOTION FOR FINAL APPROVAL**

*See* Settlement Agreement § 2.2.[2]

The settlement also provides for prospective relief.  Every class member who wishes to be removed from Defendant's mailing lists (i.e., Defendant's mailing list and/or Perks Program database) may request to be removed therefrom by means of a link to a website maintained by the claims administrator.  *Id.*

Plaintiff and her counsel also obtained injunctive relief as part of the settlement that requires Defendant to improve training and in-store signage so that customers are made aware that they are not required to provide PII in order to complete a credit card purchase.  Defendant has agreed as part of the settlement to (1) comply with Civil Code section 1747.08 so long as it remains in effect, (2) amend in-store signage in order to provide notice to customers that the provision of PII is not necessary to complete a transaction, and (3) provide its California employees with additional training regarding the requirements of California Civil Code section 1747.08.  *See* Settlement Agreement §§ 2.3, 2.4, 2.5.

Further, the Settlement Agreement contains a release that is specifically limited to claims that were alleged or that could have arisen out of the facts alleged in the Complaint and that were or could have been the basis of claims by Plaintiff or any member of the Settlement Class alleging that Defendant violated California Civil Code section 1747.08.  *See* Settlement Agreement §§ 1.22, 4.4. The release comports with the applicable law, which holds that a class action lawsuit may release all claims "that may arise out of the transactions or events pleaded in the complaint."  *See* Conte & Newberg, 4 Newberg on Class Actions (4th ed.) § 12:15, at 312; *see also Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 16-18 (2d Cir. 1981).

Finally, the Settlement Agreement allows Class Counsel to make an

---

[2] As detailed more fully in Plaintiff's Motion for Preliminary Approval, the certificates are not "coupons" under CAFA.

**MOTION FOR FINAL APPROVAL**

application to the Court for an award of attorneys' fees and costs, which is not part of the settlement to the Class.  Subject to Court approval, Defendant agrees to pay attorneys' fees in the amount of $198,750.00 and costs not to exceed $12,500.00 to Class Counsel.  *See* Settlement Agreement §2.7.  As for the incentive award, Plaintiff will be allowed to make an application to the Court for an award in the amount of $5,750.00 in recognition for her role in serving as class representative and the attendant risks.  Said amount is subject to Court approval.  *See* Settlement Agreement §2.6.

### iv.  The Extent of Discovery Completed and Stage of Proceedings

The original Complaint was filed on January 15, 2014.  The parties litigated the case for nearly a year before engaging in a mediation.  During that litigation, Plaintiff propounded interrogatories and document requests on various issues relating to merits and class issues.  Defendant provided substantive responses to written discovery and documents, and Defendant confidentially provided additional information in connection with the mediation, including class list information.  The parties subsequently conducted a full-day mediation and began the settlement process.  Eventually, after adversarial, non-collusive and arms-length negotiations through the assistance of Judge Infante, the parties reached a resolution.

### v.  The Experience and Views of Counsel

When counsel recommending approval of a settlement is competent and experienced, their opinion should be given significant weight.  *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Weinberger v. Kendrick*, 698 F.2d 61, 75-76 (2d Cir. 1982) (affording great weight to opinion of competent and experienced counsel in favor of settlement approval).  In the instant case, Class Members were represented by counsel with extensive experience in complex class action litigation, who have negotiated numerous class action settlements in various courts.  *See* Declarations of Class Counsel in support of Plaintiff's Motion for

**MOTION FOR FINAL APPROVAL**

1  Preliminary Approval (Doc. Nos. 58-1, 58-2).

2          Class Counsel were satisfied with the Settlement Agreement only after

3  conducting extensive negotiations and thorough investigation into the factual and

4  legal issues raised in this case.  Even after the parties executed the settlement,

5  Class Counsel continued to work diligently on the case, monitoring the Settlement

6  Administrator and helping Class Members make claims to maximize the amount of

7  the settlement.  Class Counsel worked tirelessly to achieve the best possible result

8  for the Class Members and believe that the Settlement Agreement was an excellent

9  result.  Based on their experience and expertise, Class Counsel view the Settlement

10  Agreement very favorably.

11                  **vi.   The Presence of a Governmental Participant**

12          This factor is not applicable in this case.

13                  **vii.   The Reaction of Class Members to the Settlement**

14          A court may appropriately infer that a class action settlement is fair,

15  adequate, and reasonable when few class members object to it or opt out.  *See*

16  *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977); *Nat'l Rural*

17  *Telecomm.*, 221 F.R.D. at 528.

18          Here, at the time of filing this Motion, Class Counsel knows of no objections

19  to the final approval of the settlement.  Should Class Counsel receive any

20  objections by the September 28, 2015 deadline, Class Counsel will address any

21  such objections on or before November 2, 2015.

22          **D.  <u>The Notice Plan Complied with Applicable Legal Standards.</u>**

23                  ***i.  Implementation of Notice***

24          Under Rule 23(e)(1), "[t]he court must direct notice in a reasonable manner

25  to all class members who would be bound by a proposed settlement, voluntary

26  dismissal, or compromise."  Notice to the class must be "the best notice that is

27  practicable under the circumstances, including individual notice to all members

28  who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B);

**MOTION FOR FINAL APPROVAL**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Mullane v. Central Hanover Bank & Trust Co.*, 229 U.S. 306, 314 (1950).  Courts have found that notice by direct mail easily satisfies these standards.  *See, e.g., In re Optical Disk Drive Antitrust Litig.*, 2013 WL 2289977, at *2 (N.D. Cal. Mar. 22, 2013); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 1190634, at *6 (N.D. Cal. Mar. 21, 2013).

The Notice here included direct, individual notice to all Class Members either via email or U.S. mail.  These methods of notice complied with the Court's preliminary approval Order (Doc. No. 60) and were unquestionably the best notice practicable under the circumstances.

*ii.   Form and Content of Notice*

Regarding the form and content of notice, Rule 23(c)(2)(B) requires that:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Notice satisfied the above requirements.  It provided a clear and concise explanation of the case, the Class definition, a summary of the lawsuit, the rights of Class Members to retain an attorney, the rights and procedures for Class Members to exclude themselves, and the binding effect of the settlement on the Class Members.

### E.   The Claims Process Is Fair, Necessary, and Reasonable.

Here, completion and submission of a claim form was <u>not</u> necessary for the Class Members.  Rather, Class Members will automatically receive the benefits of the settlement unless they seek exclusion or object.  Additionally, Class Members and the entire consumer public will receive the benefits of the injunctive relief

**MOTION FOR FINAL APPROVAL**

achieved by the settlement without the requirement of any further action on their part.  Such a process could not be more fair and reasonable because it provides the Class Members with the benefit of the settlement without any burden to them.

### F.  The Settlement Class Satisfies the Requirements of Rule 23.

In its preliminary approval Order, this Court certified the Settlement Class as defined in the Settlement Agreement.  (Doc. No. 60 at p. 2 (¶ 2(a).)  In so doing, the Court made a preliminary determination that the Settlement Class satisfied the requirements of Rule 23.  *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004).  Plaintiff now submits that the Settlement Class may finally be certified for settlement purposes, as it continues to meet all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).

## V.   CONCLUSION

Plaintiff respectfully requests that the Court grant final approval of the settlement, as set forth in the proposed Order submitted herewith.

DATED: August 19, 2015              JAMES T. RYAN, PC
                                    LAW OFFICE OF KENNETH A. GOLDMAN, PC


                                    By:   /s/ James T. Ryan
                                    JAMES T. RYAN, Esq.
                                    Attorney for Plaintiff, ALANA SCHWARTZ

**MOTION FOR FINAL APPROVAL**